W. G. Brown *v.* County Court of Fayette County

(No. C.C. 459)

Submitted September 20, 1932.   Decided September 27, 1932.

*Hubard & Bacon* and *Wm. G. Brown,* for plaintiff.

Lively, Judge:

By various recorded orders, notably that of December 9, 1931, the county court of Fayette county announced its intention not to use prison labor in the building, repair, or maintenance of county-district roads until the further order of the court; and requested the sheriff to discharge from jail all persons who were held therein for payment of costs and fines after ten days had expired from the end of their sentences of confinement.

Relator Brown, state commissioner of prohibition, filed his petition in the circuit court to compel, by mandamus, the rescission of these orders, and to compel the working of such prisoners on the county-district roads or in the preparation of materials for the same. The respondent demurred to the petition and filed answer thereto. The demurrer was overruled, and relator then demurred to the answer as pre-

senting no defense. The court overruled the demurrer to the petition, but sustained the demurrer to the county court's answer, and certified his ruling for review.

The county court makes no appearance here.

The petition sets out that relator is the state commissioner of prohibition and charged with administration of the prohibition laws; that Code, 60-2-4, empowers justices of the peace to try infractions of the prohibition laws, and upon conviction the justice shall impose the sentence fixed by law; that Code, 17-15-1, requires that all able-bodied male persons over sixteen years upon such conviction in any court and sentenced to imprisonment in jail and adjudged to pay a fine and costs, shall also be sentenced to labor on the county-district roads, or to labor in quarries in the preparation of road materials, during the time of such imprisonment and until such fine and costs are satisfied; and that under section 3 of that article the county court shall provide for the working of such prisoners on county-district roads and their safe-keeping while performing such work; that under the orders entered by the county court many violators of the prohibition laws since convicted and sentenced to pay fines and costs have been discharged after being confined for ten days therefor; and that the orders and the action of the county court are in violation of the plain provisions of the law and obstructs and hinders the enforcement of the prohibition laws.

The county court answers that, at the time of filing its answer, it did not have sufficient money for working the prisoners under the provisions of the law, saying that its net funds allocated to the various magisterial districts was only $12,092.00; and that to compel the working of the prisoners would require it to expend money and incur indebtedness in violation of chapter 11, article 8, section 13, Code, which provides that it shall not expend any money or incur any indebtedness or obligation, or make any contract, express or implied, the performance of which would involve the expenditure of money in excess of funds legally at its disposal and which cannot be paid out of the levies for the current fiscal year, or out of the fund against which it is issued.

Respondent further answers that its orders dispensing with prison labor are only effective during winter months and are therefore temporary in character; that it has used prison labor in the summer months and found it expensive and unprofitable even at that time and that it has dispensed with such labor for the purpose of minimizing the expense, and saving to the taxpayers; that the county court, under the constitution and laws, has superintendence and administration of the internal and police affairs of its county, including the establishment and regulation of roads, and that it is not mandatory upon it to build roads with prison labor, and that it has discretion to use what means it has at its command to build and maintain roads; that it has adopted the policy of utilizing prison labor when such labor could be economically employed and that such labor can only be profitably employed on definite projects of constuction and improvements requiring continuous work when weather conditions permit, and that the use of such labor in winter months is extravagant and a wilful waste of public money.

It will be seen that respondent. admits that it will not work the prisoners in the winter months and contends that it has discretion and judgment to dispense with such labor at any time it may see fit, in the interest of the taxpayers; and that it does not have money on hand to employ such labor, has no program for building roads, and the only work on the roads now being done is for repairs and maintenance, for which it has only about $12,000.00 on hands to the credit of some of the magisterial districts.

Does the answer set up a good defense? The circuit court has said it does not, and its sufficiency is the only question before us.

A reading of the sections of the prohibition and road laws, above set out, impels the conclusion that the legislative policy was to employ prison labor in the building and maintenance of county-district roads. The statute is clear that persons committed to the county jail shall be sentenced to labor on the public roads while the sentence lasts and for the payment of fines and costs imposed. Section 3, article 15, chapter 17 of the Code (the road law), says "the county court of each

county shall provide for the working of such prisoners and for their safekeeping while performing such work." This section is mandatory in character. It does not mean that the county court shall always be building roads and entering into large and continuous road improvements. We think the intention is that whenever there is road work to do, whether building a road, repairing or maintaining it, or in the preparation of road materials to be used in the future, and there are prisoners in confinement subject to the provision of laws above set out, that these prisoners should be utilized for such work. On the one hand, the statutes are punitive and utilitarian, and on the other, humanitarian. Respondent admits that it is doing repair work on and maintaining the county-district roads and that it has about $12,000.00 in the district road funds. Some one is being paid for that work, and the statute being mandatory and the prison labor being available the plea of discretion in the use of such labor is not availing. It may be true, as averred in the answer, that prison labor is expensive and does not give fair return for the money employed in putting it to use. But that is a question which was primarily before the legislature and within its province to determine. *Hutchinson* v. *County Court,* 100 W. Va. 461, 130 S. E. 645. The superintendence and administration of county courts in the establishment and regulation of roads is "under such regulations as may be prescribed by law". In such matters, they are controlled by the statute. See section 1, article 10, chapter 17, Code. The plea of economy cannot be invoked against operation of this law. To permit a county court having work on the public roads and available funds for the purpose to use its discretion in the employment of prison labor on the plea of economy, would emsculate the statute and would result in partially relieving the malefactors of law from the punishment inflicted. It will be remembered that a prisoner who is not furnished work on the county roads or in the preparation of road materials cannot be detained for more than ten days after the expiration of his jail sentence for payment of the fine and costs. Code 1931, 50-18-9; *State ex rel. Mathews* v. *Stephenson, Sheriff,* 112 W. Va. 218, 164 S. E. 38. He cannot be

held indefinitely awaiting the convenience of the county authorities to furnish him work. *State ex rel. Lee* v. *Conley, Sheriff*, 111 W. Va. 19, 160 S. E. 227. The failure or refusal of the county court to furnish work to the prisoner within ten days from expiration of his term of sentence demands his release from confinement for non-payment of the fine and costs and is tantamount to annulment of his sentence that he shall pay his fine and the costs in that manner, where he fails to pay it in money, or give bond for payment.

The ruling of the trial court is affirmed.

*Affirmed.*